Good morning, Your Honors. Jonathan Houghton on behalf of Appellant 1210 Cacique Street. And may I reserve 2 minutes for rebuttal, please? Thank you. The district court in this case utilized an improper heightened pleading standard. It was contrary to rule 8. It was contrary to the Supreme Court's determinations in Twombly, Iqbal, and its recent determination in Burke v. Choi in January. And it turns property rights into a disfavored second-class constitutional right. The district court's decision should be reversed. A complaint does not need to allege detailed factual allegations. If the facts is true, plausibly allege that the City of Santa Barbara's vacancy control was an unconstitutional regulatory taking, then the complaint survives the motion to dismiss and the complaint moves into discovery and on to trial. It's not about whether this property owner wins. It's not about whether or not this property owner will prevail at trial. And in fact, the Supreme Court has said that even if a court views it as improbable that a property owner will win, so long as the claim is plausibly alleged, then the case moves on. The point of this, Your Honors, is that rule 8 is an extraordinarily low bar. As the Supreme Court recently said in Burke v. Choi, pleadings are designed and the pleading standard is designed for the case to get into discovery. A property owner does not have to provide evidence. A property owner only has to allege the minimum of facts in order to plausibly allege a claim because rule 8 is a ceiling and it's intended to be a low ceiling. So can I ask, one of the phrases you use in the complaint, I think, is operate at a loss. What do you mean by that? Operating at a loss, Your Honor, are facts supporting the fact that the vacancy control regulation took 92.5% worth of value away from this property. But by value, you mean just what was expected in the person who bought its mine? No, Your Honor, what it was worth. The property is worth 92.5% less because of the vacancy control regulation. That's the allegation. How is that calculated? Has there been an appraisal of selling the property or what do you mean by that? Well, I'm actually glad you raised that, Your Honor, because I think it raises a very important point and why this is a heightened pleading standard that's being imposed by the district court. We don't have to put an appraisal within our complaint. Well, I guess I'm just wondering how we can even tell if that's sort of an assertion of law or an assertion of fact. I mean, I don't under… Or a conclusion. Right, because you can't just assert the legal conclusion, right? You would acknowledge that.  You can't just say this is a taking. Yes, Your Honor, absolutely. So you've got to say something more than that. And so there needs to somewhere be an allegation of fact. And if the phrases used are so vague that we can't tell what type of fact you're even talking about, that's what I was struggling with. And I don't really see you asking us to give you leave to amend either. You seem to be wanting us to say this complaint is enough as it is. Well, it is, Your Honor. I mean, if the court wants to send it back. But I will say that we alleged in the complaint that the value of this property is worth $6.9 million less. And that is 92.5 percent worth of the property's value. That is a fact. We alleged… You're basing that… I mean, this part of the complaint is a little vague. But I understood you to be basing that on something in the nature of an assessment of the discounted present value of the revenue that you would get from the property. Well, we're basing that, Your Honor, on the loss of income where we allege that – we allege facts that in December of 2021, we would be losing $665 a month, then $1,000 a month. But the way that you get from that to a diminution in value, I think, is by saying that the value of – like this does not have subjective – you are not like sitting there enjoying the view. Like the value is you're getting revenue from it, right? Yes, Your Honor. And the market value of a revenue-generating property is the discounted present value of the stream of future income from it, right? That's one way. And if the income goes down, then the value goes down, right? Yes, Your Honor. Okay. And that's – I mean, the complaint doesn't really spell that out with very much work, any mathematical precision. But that's sort of what the complaint is gesturing at. Is that right? Well, I wouldn't say it's gesturing at, Your Honor. I mean, I would say that we pled the income losses in the complaint that go along with the loss of value of 92.5 percent. But I think the distinction here, Your Honor – But aren't you assuming that the fair market value of the rent is higher than the control limit? Yes, Your Honor. And how did you get to that number? Does that factor into the 92.5 percent number? Yes, Your Honor. That if we – well, it's a reasonable inference, Your Honor, from the numbers that we pled. But I think here's the distinction. Are you asking us to prove our case as a matter of law within our complaint or do we simply have to plead it? That I think is – that's the disconnect here. If you concluded that the fair market value of the rent was under 10 percent, do you have a case? I'm sorry, Your Honor. I may not have understood that. Can you repeat that again, please? Isn't the cap 10 percent? The cap is 10 percent when a vacancy occurs, yes. And if you concluded that without the cap you could only get – now the town is imposing the cap. But the fair market value of a rent increase on that lot is only 8.9 percent. You don't have a constitutional case, do you? We might because I – There's a loss. Yeah. You know, Penn Central is – there's no minimum mandatory economic threshold. Sorry. I think in the hypothetical the cap imposed by the city is 10 percent. You can't raise the rent more than 10 percent. But I think Judge Vitelliano's hypothetical is the fair market value would be less of an increase than that. Like no one would rent it if it was more than a 7 percent increase. So if that's the case, I don't see how you could possibly have a claim. I apologize. I misunderstood the hypothetical. And, yes, Your Honor, you would be right. But what we have alleged in the complaint is that as a direct result of the ordinance, we have suffered a 92.5 percent loss in value. And I think – And what interest rate are you using to discount the future rental income? Because that's not in the complaint. It's not, Your Honor, because it's a complaint. And the interest rate that is used to discount values comes from Rule 26 expert discovery. That I think is the problem in the disconnect is that the district court – It seems to me that you – there is some force to what you're saying about Rule 8 and Iqbal. But at the same time, it seems like you have created part of the problem here because you must have had – in order to – you've got a bunch of numbers that do not obviously get you to $6.9 million. So there is some calculation that you were doing and some assumptions that you were using. But you didn't tell anybody what those were. So I guess I'm just saying part of the problem here is of your creation and how you chose to draft this complaint by leaving out a lot of the detail that you must have had in mind in order to do the calculation. But I would respectfully say, Your Honor, that I think part of the problem here is that the district court did not take these numbers as true. We said that we lost 92.5 percent of value and they said, I don't believe you. We are saying that we are going to be losing ultimately $590,000 a year in lost rent. And the response we're getting back is, I don't believe you. We will prove these numbers at trial. We will prove these numbers when we produce income and expense statements and pro formas and our expert report in our Rule 26 discovery. But we are not required to give evidence and prove our case within our complaint. And I think the central conceit and the central difficulty here is that when we say we lost 92.5 percent of value, the response we're getting back from the district court is, I don't believe you prove it. And you need to provide evidence behind these numbers and you need to provide how you got there and you need to provide discounted cash flows and what your interest rates are. That's proving your case. That's not pleading your case. And you're not claiming that you're operating at a loss in the sense of you need to spend more each month to keep this property going than than you're getting. Well, we we are operating at a loss, Your Honor, because we said in the complaint that starting as of December 2021, we're going to be losing six hundred and sixty five dollars a month. And that against what the profit you're making less profit than you had anticipated or you're actually spending more than you're taking in each month. The complaint, Your Honor, simply says less profit than anticipated. But overall, what all of the cases say is, you know, talk about your value and how is your value changed and what is your before and what is your after? And with a six point nine million dollar loss equating to ninety two point five percent of value, that means our value before was seven point four million and our value after is five hundred and fifty thousand. And in terms of plausibly alleging and a regulatory takings claim, those facts taken as true, plausibly allege a regulatory takings claim. A ninety two point five percent loss in value is a plausible regulatory takings claim. And even if this court thinks, you know what, I think you're going to lose. It doesn't matter because all we're talking about is a complaint, not a trial. And that is the disconnect. And that is why the district court here was imposing a heightened pleading standard. So I know that you have arguments on all three prongs of the test. We've been talking a lot about just the loss of value part. But yes, if we disagree with you on the other prongs, then does it matter whether your allegation about loss is good enough? Well, for Penn Central overall, your honor, we don't have to run the table and get three out of three. But I will say we do need to get at least one out of three. You know, we can't fail on all of those. But I will say that for Penn Central, it is an ad hoc test. There is no magic formula. There is no precise mathematical variables. But I would submit, your honor, that even beyond economic impact, I think we certainly plausibly allege the others as well. I mean, for example, with respect to investment backed expectations. In 2006, the mayor said that he couldn't figure out a legal basis to reinstate vacancy control. But it's not the same mayor anymore. No one would anticipate that it's always going to be the same mayor. And the case that he was relying on had been overruled already. So I'm confused to how this is a good argument. Well, the first, your honor, is don't we as a property owner have a right to rely upon the government in terms of our reasonable investment backed expectations? If the government says I'm not going to do this. Doesn't really say I'm not going to or not trying to. He just said I didn't think you could. And and it seems like he was wrong as a matter of law that someone could have easily figured out if. I mean, maybe that begs the question of this case. But but in terms of why he thought he couldn't. Well, it seems like that wasn't true. I would submit, your honor, that if if the government says we're not going to do this, we have a right to reasonably rely on that. But beyond that, the government didn't say that a mayor said that a mayor who was no longer in office and perhaps a mayor who was no longer in office because he said that. And and the people of the city decided to elect the new mayor who may have a different view. I think it puts property owners in a difficult position, your honor, if they can't rely upon statements made by the government and disavowing a statement by the government takes away our investment backed expectations. But beyond that, the other part of it is we're not relying on a legal case. We're relying on 31 consecutive years of the city of Santa Barbara not implementing vacancy control. Well, after this happened and well after he 20s for 26 consecutive years after he they said they were not going to implement, they did not implement vacancy control. So it's not just about that. It's about 31 years of continuous conduct. And is there a case that tells us when we look at what an expectation is, we should look at the precise jurisdiction, like the only issue is Santa Barbara or do we think about California? Do we think about the Ninth Circuit? What tells us? Well, I'm glad you raised that, your honor. The first is I don't know of a case that specifically says Santa Barbara, but we are doing this as an as applied claim. I think that it is improper to expand it beyond that and base reasonable expectations on other jurisdictions. But I guess with that troubling, I mean, there's always going to be the first rent control ordinance. Right. And our and in our circuit, generally, rent control ordinances have been upheld as not takings. And similarly with mobile home places. So the idea that they hadn't done it yet, it seems to sort of undermine all of those cases because it's always going to be there's always going to be a first. I have two responses to that and I see my time it. But as long as we're asking questions, you can keep answering. Fantastic, your honor. Thank you. The first is to simply say that you don't have investment backed expectations because you are a property owner is essentially to take this as a matter of law and say reasonable investment backed expectations don't count anymore. You as a property owner have to anticipate everything. And as a matter of law, your investment backed expectations can never be disrupted. Well, I don't think it would be any property owner, be a property owner of a type of property that is used for rent that has been regulated elsewhere in the in the legal jurisdiction, at least. Which I'm also glad you raised, your honor, because in the state of California. Only 93 out of 483 cities implement rent control for mobile home parks, 19 percent. And in the state of California, only 10 out of 58 counties implement rent control for mobile home parks. And even less of that helpful to you. I mean, why isn't that enough to show it can be done? Well, because your honor, in terms of reasonable investment backed expectations are reasonable investment backed expectations can also be based on the fact that we are in the 80 percent, not the 19 percent. If 80 percent easy thing called democracy have anything to do with reasonable expectations. I'm sorry, your honor. Government. Has a right to change its mind, doesn't they do, your honor, but and this is why it goes back to the city of Santa Barbara. They do, your honor. But here are the two important facts to that. Number one, they change their mind. We had a right to rely upon the regulations that were in place as of the day we bought the property. The Ninth Circuit said that in Bridge Antalya. Many other Ninth Circuit cases have said that as well. So, yes, they can change their mind. But when they do change their mind in a way that interrupts investment backed expectations, that creates a plausible claim. And again, your honor, we have to keep in mind that the context of this is plausible pleading. If I say that we have a right to rely on the mayor and we have a right to rely on 31 years, 31 consecutive years of the government not implementing rent control. Those are legal arguments, not factual arguments. I think they're factual arguments, your honor, because I think we have a we have we have a right to rely that I'm not questioning whether or not the mayor made that statement. We're not questioning whether or not your your client relied on that statement. What's an issue is whether or not there's a right that's been infringed when government changed its mind. Isn't that what this case is about? That's correct, your honor. And I'll take the word right out of that. That was not that was not the correct word. We have a reasonable expectation based on 31 consecutive years, based upon the mayor's statement, based upon the fact that 80 percent of the municipalities do not implement rent control. All of these things create reasonable investment backed expectations. If there are material issues of fact, that's a trial issue. And you might just do you agree that you might have a reasonable investment backed expectation and still lose because balancing all of the Penn Central factors together like you don't make out a claim ultimately. We may, your honor, but it doesn't matter now because this is a complaint. This is plausible pleading and it's a low bar. We're not talking about providing evidence that we win. We're we're talking about have we given the government notice of a claim if we want to come back here and have the same debate after trial? I'm more than happy to do that. But now, have we given the government notice of a plausible regulatory takings claim with facts? We have. And that's the only bar that we need to achieve now. But because we're getting into do you win, do you not win? I don't agree with you. I disagree with you. Those are trial issues, not plausible pleading, perhaps summary judgment issues. Absolutely. Yeah, they can be summary judgment issues as well, your honor. But but that's why what the district court created here is a heightened pleading standard, because it is all we're talking about is have we given the city of Santa Barbara notice of a regulatory takings claim? And we have. We'll give you two minutes for rebuttal. Thank you, your honor. Good morning and may it please the court. Pamela Graham, on behalf of the city of Santa Barbara. So what the district court did here is not unique. There's a lot of cases, many cases of precedent that we've cited in the briefs where a district court has gone through on a motion to dismiss the three Penn Central factors and found that the pleading simply did not hold water. We cite a few of those cases, but I'd like to focus on one first in Hotel and Motel Association of Oakland versus city of Oakland, which was a case by this circuit. The court explained that although the Penn Central balancing test is necessarily fact specific, federal courts often examine these factors at the motion to dismiss stage to assure that the plaintiffs have satisfied their burden to establish the plausibility of their claims. In other words, the claims are looked at carefully to make sure that it actually holds water. That's what the district court did here. So if we start with the first factor on the Penn Central, the diminution in value, the complaint alleges a ninety two and a half percent decrease in the value. Is it your view that that is not a plausible factual allegation in the ball and Twombly sense? I think it's a conclusion. And really, those are the arguments that we made. Of course, this was on a first amended complaint. When we raised the motion to dismiss arguments on the original complaint, some of these same numbers were included. But this is a number that has no substantiation. So in terms of when you say it's a conclusion, you're not saying it's a legal conclusion. It's a fact. I'm saying it's it's a bold number that does not have support. So specifically, there is a number that is quoted, the six point nine million dollar decrease. And there are also some allegations in terms of lost rent. But there are things that are missing. So obviously, this lawsuit and this appeal are solely looking at the vacancy control ordinance. There are also rent control provisions by the city of Santa Barbara. There is no explanation in the recitation of these figures as to whether, for example, the lost rents are due to rent control generally or whether it is specific to vacancy control. So, for example, there is no discussion of how many people actually vacated mobile homes during the time that these numbers are cited for the particular years. There is no discussion of how those rents actually equate to the six point nine million dollar loss in value that is included in the allegations. And those numbers are very important because there's case precedent that is very clear that just citing a loss of rent and rent control cases is not enough. You need to actually show what the value is of the property pre regulation versus post regulation. And that's really what's missing here. You can derive one from the other. Right. Because if you if you model the value as the discounted present value of the rent, you're going to get from it. Right. I think you can derive the beginning value and the end value. That's correct. So we actually discuss in our brief that if you apply these numbers and there is a purchase price of seven point five million, what's being alleged is that the appellants only paid six hundred and seventy thousand dollars for the park. These are very wild numbers. They're simply not supported. So, yes, that's something that you could derive. What you can't figure into the equation is how these numbers that, quote, the lost rent, the compounding of lost rent actually come up to a six point nine million dollar loss. And that's critical because that's what the cases focus on. They focus on, again, what is the actual taking? How does it actually get to the point of really akin to a physical taking or an appropriation based on the regulation? And that's not what that that's what is missing from this complaint. Suppose that they just had one number, they just had the 92 percent and they said, you know, we consulted a real estate appraiser and he's told us that because of this ordinance, the property value has gone down by 92 percent. Would that survive a motion to dismiss? I don't. I think that still warrants a motion to dismiss just based on your hypothetical. Simply saying we have somebody who's going to come and testify. Sure. But and that may be a next step. But there needs to be more in the complaint to actually support that there's a diminution in value. From the case law, we know that the first and the second Penn Central factors are most critical. So it's very important to actually lay out where that number comes from. And I think even in your example, that's what's missing. This is still a conclusory value that's thrown out there without any support for it. And that's the basis for the takings claim. Obviously, there has to be a discussion as the district court went through on the second and the third factors. But I think those are more straightforward in this case and in lacking. I think the district court was appropriate to say as well that even assuming a diminution in value here, because there is absolutely no support on the reasonable investment backed expectation or the nature of the government action, that this case would fail on the second two elements. But I think that. Correct. Judge on your example. So would you urge us to just use the second to the second and third elements to resolve this case? Or do we need to grapple with the first? I think you. Well, I don't think you need to. I think that you could find on the second to that there is simply not enough for this to go past the pleading stage. But I do think that there's enough support, certainly in this record, to say that there is simply no way on these facts to allege a Penn Central case. So, yes, your honor, I think you could conclude it on the second to. What do you think they what would be more facts that they could have alleged? I think they could have alleged a few things that I've already noted. They could allege how many people actually left the mobile homes during the relevant time frame for purposes of the first element. That's what I'm focusing on, your honor. I think that they could support where they're coming up with the numbers for a loss of rent again, whether it is clearly based on the vacancy control provision or whether it is also some loss of rent based on a fair market value for rent overall. Because, again, there are rent control provisions generally for existing tenants. And when you say that, are you saying there's only so much that you can raise the rent in a mobile home park because people instead would just go rent apartments in the rent control departments? Right. And do those have vacancy control within the city beyond the mobile home? I'm not as clear on the city's rent control provisions overall, but there is rent control on mobile home parks within the city. So that means that someone who is new, so is coming into a vacant mobile home would need to come into a vacant apartment. And so I'm wondering if I'm just trying to understand your argument about rent control in the city generally, because someone new coming in would need there to be vacancy control in the apartment also. Well, I'm referring to the vacancy, the rent control that actually applies to the mobile homes themselves. So you're right that somebody may as a new resident within the city may be comparing an apartment versus actually occupying a mobile home. But really what what I'm talking about is they need to support in their complaint the loss of rent that they're citing from existing tenants who continue year to year and are subject to the other provisions of the city's rent control. That's what you're saying. Oh, well, I was. Gosh, I was assuming they weren't using that. That would be very weird, wouldn't it? I mean, I think they're trying to say that the difference comes from the vacant ones. Well, I don't think it's clear from the complaint. I don't think it's clear where these numbers come from. And that is something else that I think could be included to support it. So if you're going to give a round number in terms of how much value has been lost as a result of this regulation, and you're going to cite the fact that you couldn't charge market rents because of the rent control as well as the vacancy provision itself, you need to support where those numbers are coming from. And that's lacking here. So that's another way I think that they could support their allegations. And you you. When you say you need to support where the numbers come from, that requirement, we know that that's a reflection of your reading of Iqbal. It's a reflection of my reading of the cases where we're actually dealing either in California with rent control ordinances or specifically vacancy control ordinances. Yes. So I mean, there isn't a special requirement for how to plead loss of value in rent control cases. Right. So, I mean, the principles that we're applying here are the same principles that would be applied in any case where some element of economic loss was an element of a claim. Right. That's true. Yes. But I think we see it applied in many cases that are actually that actually deal with rent control. The rent control motion to dismiss cases that you refer us to. Those cases applied the Iqbal standard, I assume, on the motions to dismiss that were granted in those cases. That's correct, Your Honor. So just to cite one of them, it's actually an unpublished case, but it is from this court. It's Chesson, trustee of 1997 K&M Family Trust versus city of San Rafael. On that one, the court specifically focused on the lack of a interference with investment backed expectation. But we also cite others in our briefs that that go through some of the other factors. So I'm happy to discuss the other two elements. I really think that there's, you know, there's a strong discussion in our briefs on them in terms of the reasonable expectation backed investment. Obviously, here we've got some some clear case authority. This is the only point that I would add to some of the things that the panel has already addressed with appellant is the point that this is a heavily regulated industry. So this is not just about what ordinances the city of Santa Barbara had in place when they implemented rent control, when they implemented their vacancy control. But it's also very important to remember that this is a heavily regulated industry and we have a sophisticated. And when you say that, I mean, what is your answer to my question of the other side about what jurisdiction we look at? Do we look at California, the Ninth Circuit? What is there a case that tells us? What the boundaries are of the reasonable expectation in terms of like what kind of regulation there could be or whether it is a heavily regulated industry? No, I mean, I don't think it necessarily is limited to California, although here the focus certainly is on California because we're looking at the city of Santa Barbara's ordinance. In other rent control cases, there have been certainly discussions of the numbers of cities within the state that actually have rent control specific to California. There are statutes that are very specific to mobile home parks themselves. Mobile home park owners are aware of these. They discuss terms of the lease, what needs to be included, what can be negotiated, how you actually challenge the terms of the lease. So all of this goes to the point that this is an industry where somebody that is buying into it and certainly somebody that is sophisticated and has previously owned parks within California knows that it is heavily regulated. Does that mean that in the rent control context, that prong two of Penn Central can never be satisfied? I think it's difficult. I think it's difficult in a mobile home park rent control ordinance case for that element to weigh in the favor of the mobile home park owner. Suppose the city council had said, you know, we've heard that there are some people who think that rent control has a tendency to depress supply. That's a theory. And so we're concerned about that. So we're going to pass a resolution that says we really, really promise we're never going to impose rent control. And then a few years later, they do. Would that be or you would still say, well, it's a regulated industry. People should have known better. I would say that and I would add to that the points that the panel has already made, which is that this is a police power of the municipality to be able to at some point, if they choose to impose some type of rent control in conformance with statute. So I would argue even there that that is not a clear case where there's a reasonable expectation. Is it up to the mayor or who decides this in Santa Barbara? Well, it's up to the city council. Ultimately, I'm here. It was obviously something that they weighed with over the years, whether it was something that they wanted to pass to actually promote continued affordable housing, which is an issue for so many cities in California. But it is up to the city council. Is the mayor a member of the city council? The mayor, yes, has the ability, obviously, to to weigh in with staff on whether this is something that is appropriate and to provide recommendations to the city council. Yes. In my city, though, the mayor is actually a member of the city council. Is that true in Santa Barbara as well? I think we may not have any other questions. Thank you. Let's put two minutes on the clock for rebuttal. Thank you, Your Honor. What I'd like to start with is Your Honor's question going back that you asked me as well in terms of what jurisdictions can you look at? I think for me, I am not aware of of any case, any regulatory takings case in which they looked outside of the city itself to go someplace else. I will say candidly, I'm not aware of any case that discussed that specifically. You know, can you go inside or outside? But I don't know of any case that looked outside of the jurisdiction itself. And I think looking outside creates a monumentally heightened pleading standard and burden that no property owner can ever satisfy because it is a slippery slope that never stops. You cannot require a property owner to go one town over two towns, over three towns, over five counties, over whatever it is to determine investment backed expectations, which is besides the fact that under the standard advocated by the district court, investment backed expectations can never be disrupted as a matter of law because a property owner must expect everything. And must expect all change. That is part of the heightened pleading standard that the district court adopted and going outside of Santa Barbara is only going to heighten it even further. Secondly, Your Honor, I wanted to talk about the issue that was raised by the city frequently is that you have to provide support. We need more. You have to provide more for your numbers. And I think, Your Honor, that dovetails into the heightened pleading standard that was enacted by the district court here, which essentially is saying, I know you lost this amount of money, but I don't believe you prove it. Well, so, I mean, setting that aside for a moment, could you provide more support? I mean, if you if you were to file, if you were to have the opportunity to file another complaint, I mean, you heard the points the city brought up. You heard some of the questions I asked. Are those numbers there? Of course, we I guess I I'm a little bit skeptical, given that like you with the opportunity when when you're already on the First Amendment, you didn't ask in your brief for leave to amend. So what can you say to assure us that you would be able to provide more detail? Well, the information is there, Your Honor. I mean, we have income and expense statements. We can retain an expert appraiser. We can even put that in with it. But we shouldn't have to. And I think that's the point. Certainly we can. And if given the chance to, we absolutely will. But what I do want to point the court to on this issue directly is the Supreme Court's recent decision of Burke v. Choi. That I provided in a supplemental authority back in January. It's docket number thirty five. And in it, they talked about the pleading standard. And what the court said that's relevant to hear is really it is a ceiling. You do not have to provide evidence. You do not have to provide expert evidence. All you have to do is plausibly allege a claim. If the court wants to impose a heightened pleading standard and tells us what that heightened pleading standard is, we will meet it. Any amount that you ask us to provide, we can provide, but we shouldn't have to because a complaint is not a trial. And we should not have to provide that. Certainly we can and we will. But the point of this whole exercise, Your Honor, is that the district court below and many other courts have been subjecting property owners in rent control, this case included, to a heightened pleading standard that is turning property rights into a second class constitutional right. And that, I think, is amplified by what the city said in their brief and what the court said, which is property owners always lose. They're not talking about the facts. Our pled facts don't matter in that equation. They don't care what our complaint says. We are a property owner. And because we're a property owner in rent control, you therefore lose. And that is a persistent, improper, heightened pleading standard that has been enacted over and over and over again. And this is an opportunity to correct it. If you require us to fulfill a heightened pleading standard, we will, but it's wrong. Thank you. Thank you. We have your argument. Thank you both for your helpful arguments. This case is submitted.
judges: FRIEDLAND, MILLER, Vitaliano